UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARY MILLER, | ) |
| Plaintiff, | ) ) ) Case No. |
| vs. | ) ) ) **COMPLAINT AND** |
| ST. LOUIS-KANSAS CITY CARPENTERS REGIONAL COUNCIL | ) **JURY DEMAND** ) ) |
| Defendant. | ) |

## *COMPLAINT FOR AGE DISCRIMINATION UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT*

COMES NOW Plaintiff Mary Miller, ("Plaintiff") by and through the undersigned counsel, and files this civil action Complaint and Jury Demand ("Complaint") against Defendant St. Louis-Kansas City Carpenters Regional Council ("Defendant"). The following allegations are based on personal knowledge as to Plaintiff's own conduct and on information and belief as to the acts of others.

### *INTRODUCTION*

1. This civil action challenges Defendant's unlawful age discrimination with respect to the termination of Plaintiff, and with respect to the Defendant's employment practices. Plaintiff worked as a front-office receptionist for Defendant for over fifteen years. In December, 2014, Plaintiff was given the option of either accepting a demotion to part-time employment status, or facing termination by Defendant. Plaintiff was terminated on February 16, 2018, along with two other front-office employees over the age of sixty. Defendant provided no explanation for Plaintiff's termination beyond "part time isn't

working out." Plaintiff never received an adverse performance evaluation during her employment with the Defendant.

2. At the time of her termination, Plaintiff was seventy years old. Defendant deliberately singled her out for termination and replaced her with multiple, younger employees, who were hired to carry out the same responsibilities as the Plaintiff, based on discriminatory bias against Plaintiff's age, in violation of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. Further, Defendant arbitrarily demoted Plaintiff to part-time employment status, without justifying the demotion, after Plaintiff had worked with Defendant for over twelve years. Defendant did not demote similarly situated, younger employees to part-time status. This practice constitutes disparate treatment of Plaintiff on the basis of age, which is also prohibited under the ADEA.

3. Plaintiff brings this action seeking an order awarding her back pay for the wages she would have received, had Defendant not terminated her using discriminatory practices in violation of the ADEA, and for Defendant's unlawful and discriminatory treatment of Plaintiff culminating in lost wages and termination.

### *PARTIES*

4. Plaintiff Mary Miller is a 72-year-old resident of St. Louis, Missouri. Plaintiff was hired by the Defendant on February 3, 2003 to serve as a front-office receptionist with the Defendant's St. Louis office.

5. Defendant St. Louis-Kansas City Carpenters Regional Council is a trade union for carpenters with over 20,000 members and thirty-four Local Unions representing Missouri, Kansas and Southern Illinois, and headquartered in the St. Louis, Missouri office where Plaintiff was employed.

## *JURISDICTION AND VENUE*

6. This case is brought under the ADEA, 29 U.S.C. § 621 *et seq.* Thus, this Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(4).

7. Plaintiff Mary Miller was hired by Defendant in the city of St. Louis, Missouri, and worked for Defendant throughout the entire course of her employment in St. Louis, Missouri.

8. Venue is proper in the Eastern Division because all of the acts and omissions from which Plaintiff's cause of action arises occurred within this Division. Venue is also proper in this Division because the Defendant is subject to personal jurisdiction in this Division, and therefore "resides" in this Division for venue purposes. 28 U.S.C. § 1391(c).

9. Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), and the EEOC issued a timely Charge of Discrimination on July 17, 2018. *See* EEOC Charge No. 28E-2018-01304.

## *FACTS*

10. Plaintiff was hired by Defendant as a full-time front-office receptionist on February 3, 2003. Plaintiff's responsibilities in this position included collecting union dues from members, answering office phones, drafting weekly and monthly letters on behalf of union officers, and accounting for office supplies.

11. On or about December 19, 2014, the then-current office manager, known to Plaintiff as "Ginger," approached Plaintiff and asked her "[H]ave you thought about going part time?"

12. When Plaintiff resisted the suggestion, the office manager explained to Plaintiff that she could choose "between part-time and no time." Plaintiff was then demoted to part time

{02302333.DOCX;1}

employment status by the Defendant. Defendant did not provide further explanation justifying why Plaintiff was demoted to part-time status.

13. On Plaintiff's knowledge and belief, Plaintiff was the only employee in Defendant's headquarters office demoted to part-time employment in December, 2014.

14. Immediately following her demotion to part-time status, Plaintiff's hours were reduced from forty hours per week to twenty eight and a half hours per week.

15. Between the time of her demotion and February, 2018, Plaintiff earned approximately $23.20 per hour.

16. The Defendant employed thirteen total receptionists, several of whom were below the age of forty, and working at full-time employment status, at the executive office building in which Plaintiff was employed.

17. At the time Plaintiff was demoted, two other front-office receptionists, Maureen Lordo and Peggy Gabala were already working at part-time employment status.

18. On February 13, 2018, Albert Bond, Executive Secretary Treasurer for the Defendant, informed Plaintiff that "part time didn't seem to be working out" and that the Defendant was "going in a different direction." Namely, Plaintiff was informed that she was being terminated and that all part-time front-office receptionist positions were being terminated. Albert Bond represented to Plaintiff that "we love ya [sic]" and that

19. Maureen Lordo and Peggy Gabala were terminated on the same day, immediately after Plaintiff was notified of her termination. These two employees were aged sixty (60) and sixty-one (61) years, respectively, at the time they were terminated.

20. Plaintiff was asked to consider signing a "Separation Agreement" with a human resources representative of the Defendant on the same day that she was notified of her termination.

4

{02302333.DOCX;1}

On Plaintiff's information and belief, this "Separation Agreement" contained language which could be construed as a release of claims. Defendant employee Albert Bond indicated that Defendant did not expect Plaintiff to work through the remainder of the work week, however, Plaintiff should take the remainder of the work week to sign the Separation Agreement.

21. On or about Saturday, February 17, 2018, a human resources employee of the Defendant contacted Plaintiff via telephone, and communicated to Plaintiff that her four weeks' severance pay from the Defendant was *conditioned* on her signing of the "Separation Agreement." The human resources employee of the Defendant demanded that Plaintiff submit a signed "separation agreement" document to the Defendant not later than 7:00 a.m., February 19, 2018. Plaintiff was obligated to meet with the human resources employee on an off-ramp of the I-55 interstate freeway in order to timely meet Defendant's demand and collect her four weeks' severance pay.

22. Having demoted Plaintiff to part-time status roughly three years before, Defendant was aware that Plaintiff earned approximately $34,000 per year at the time she was terminated.

23. At no time between February 13 through February 17, 2018, or at any time before or after, was Plaintiff afforded an opportunity to negotiate the conditioning of her severance pay on her signing of the "Separation Agreement." Plaintiff was not afforded the opportunity to negotiate the duration (or, as a consequence, the amount) of severance pay offered as consideration for the "Separation Agreement."

24. On Plaintiff's information and belief, Defendant's policy and custom was to offer four weeks of severance pay to employees terminated without cause.

5

25. On Plaintiff's information and belief, it was not generally Defendant's policy or custom to mandate or condition issuance of severance pay on the signing of a "Separation Agreement" as in Plaintiff's case.

26. On Plaintiff's information and belief, Defendant similarly conditioned severance pay on the acceptance of a separation agreement in the case of the other two front-office receptionists who were also terminated on February 13, 2018.

27. At no time on or subsequent to February 13, 2018, was Plaintiff provided any explanation for her termination relating to her performance as an employee of Defendant, or explaining the basis for her termination beyond the remark by Albert Bond that "part time wasn't working out."

28. On Plaintiff's knowledge and belief, Defendant employee Albert Bond hired two employees to fulfill the duties and responsibilities for which Plaintiff was previously responsible, within approximately two weeks of Plaintiff's termination.

29. On Plaintiff's knowledge and belief, both of the new hires who assumed Plaintiff's responsibilities were employees under the age of thirty.

### *COUNT I—UNLAWFUL TERMINATION OF PLAINTIFF BASED ON AGE DISCRIMINATION IN VIOLATION OF ADEA, 29 U.S.C. § 621 et seq.*

30. Plaintiff incorporates Paragraphs 1-31 fully as though restated herein.

31. Plaintiff was employed by Defendant from February 3, 2003 until February 13, 2018.

32. Defendant qualified as an employer in accordance with 29 U.S.C. § 630(b), insofar as Defendant was a person employing more than twenty employees at all times relevant to this suit.

33. Plaintiff was a member of a protected group, in that she was over forty years of age at all times relevant to this suit.

34. Defendant never notified Plaintiff that she was not fulfilling Defendant's legitimate expectations for her service as an employee, so far as Plaintiff never received any adverse performance evaluation or counseling between December, 2013 and her demotion to part-time status in December, 2014. Plaintiff was provided with an ultimatum of either accepting a demotion to part-time status, or facing termination at that time. Plaintiff received no adverse performance evaluation or feedback from Defendant between December, 2014 and the date of her termination on February 13, 2018. Defendant represented to Plaintiff that "we love ya" and "we're going in a different direction."

35. Defendant terminated Plaintiff's employment on February 13, 2018.

36. But for her age at the time she was demoted, Plaintiff would not have been terminated.

37. Defendant terminated Plaintiff under circumstances giving rise to an inference of age discrimination. Defendant provided as the basis for her termination that "part time wasn't working out." Defendant exercised its own discretion in demoting her to part-time status without providing any justification for the demotion beyond office manager "Ginger's" remark "have you thought about going part-time?" At the time that Plaintiff was demoted, in December, 2014, she was the only employee in the front-office over the age of sixty who was not already working part-time. However, at the time of her termination, only Plaintiff, Maureen Lordo and Peggy Gabala were targeted for termination, and all three terminations were justified on the basis that "part-time isn't working out."

38. Defendant did not characterize Plaintiff's termination as "performance-related." Ordinarily, such a termination could be described as a "reduction in force." However,

Plaintiff is aware that her responsibilities were *replaced* by two newly-hired employees within two weeks of her termination, and *both* of the new employees were under the age of forty.

39. Defendant's efforts to coerce Plaintiff to sign a "separation agreement" including "release of claims" language, conditioning four weeks' severance pay for a fifteen-year employee on accepting the "separation agreement," and providing Plaintiff all of five days' opportunity to consider the "separation agreement" supports the inference of discriminatory intent.

40. Defendant's means of obtaining Plaintiff's agreement did not permit Plaintiff to enter into a "knowing and voluntary" release of ADEA rights in accordance with the Older Workers Benefit Protection Act. Plaintiff was never told by any agent of Defendant that she would release rights or claims arising under the ADEA by entering into such an agreement, or that her severance pay was conditioned on such an agreement. Plaintiff was never afforded the opportunity to negotiate the terms of the waiver, the duration of her entitlement to severance pay in exchange for the "release of claims" waiver, or even whether severance could be negotiated independently of the "release of claims" waiver. Plaintiff was not afforded a sufficient opportunity to consult an attorney. Plaintiff was never provided a revocation period of *any* duration, and most importantly, Plaintiff's five-day period to consider the agreement was grossly insufficient, with a deliberately calculated, coercive effect on Plaintiff. The circumstances surrounding Plaintiff's termination support not only an inference of age discrimination, but also the calculated effort to preclude Defendant's liability for that age discrimination.

WHEREFORE, Plaintiff Mary Miller prays for:

A. Lost wages and other compensation lost to her as a result of Defendant's discrimination based on Plaintiff's age, and prejudgment interest; .

B. Liquidated damages doubling the award of interest and lost wages, lost to Plaintiff as a result of Defendant's discrimination on the basis of her age;

C. Reasonable attorney's fees, expert witness fees, expenses and costs of this action and of prior administrative actions; and

D. Such other relief that this Court deems just and proper.

### *COUNT II—UNLAWFUL AGE DISCRIMINATION BASED ON PRACTICE OF DISPARATE TREATMENT OF PLAINTIFF IN VIOLATION OF ADEA, 29 U.S.C. § 621 et. seq.*

41. Plaintiff incorporates Paragraphs 1-41 as though fully restated herein.

42. Defendant never provided Plaintiff either an explanation or justification for Plaintiff's demotion to part-time status in December, 2014. Defendant never explained or justified to Plaintiff why Plaintiff's further employment with Defendant was conditioned on the demotion to part-time status before, during, or after the December, 2014 demotion.

43. At the time of her demotion, Plaintiff was the only front-office receptionist employed by Defendant and over the age of sixty, who was *not* already employed at part-time status.

44. Plaintiff was the *only* front-office employee demoted to part-time status at that time.

45. No front-office receptionist employed by Defendant and *under* the age of forty was demoted by Defendant to part-time status at any time during Plaintiff's course of employment with the Defendant.

46. When Plaintiff was subsequently terminated, Defendant represented that the sole justification for Plaintiff's termination was that "part-time wasn't working out."

9

47. Plaintiff was one of three front-office receptionist employees terminated on the same day. All three employees terminated by Defendant on February 13, 2018 were part-time employees, and all three were over the age of sixty.

48. As stated above, Plaintiff's responsibilities were subsequently transferred to *two* newly hired employees, both of whom were under the age of forty, and both of whom were hired to perform those duties *full-time*.

49. Plaintiff was spontaneously and inexplicably demoted to part-time status, at a point in time when every other member of her protected group, working in the front-office of Defendant's headquarters as receptionists, was already working at part-time status. Three years later, Defendant justified its termination of Plaintiff on the basis that "part-time wasn't working out." Defendant had demoted Plaintiff to part-time status without providing any legitimate business reason for doing so. Within weeks, Defendant hired two new employees to replace Plaintiff. Both of these employees were under the age of forty, and both of these employees were hired to work full-time. The circumstances culminating in Plaintiff's termination support the inference that Plaintiff was terminated due to an ongoing practice of discrimination targeting elderly employees.

WHEREFORE, Plaintiff Mary Miller prays for:

A. Lost wages and other compensation lost to her as a result of Defendant's disparate treatment based on Plaintiff's age, and prejudgment interest; .

B. Liquidated damages doubling the award of interest and lost wages, lost to Plaintiff as a result of Defendant's disparate treatment on the basis of her age;

C. Reasonable attorney's fees, expert witness fees, expenses and costs of this action and of prior administrative actions; and

{02302333.DOCX;1}

D.      Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all issues so triable in this action.

Respectfully submitted,

_____
Peter J. Dunne  #31482
PITZER SNODGRASS, P.C.
Attorney for Petitioner
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
(314) 421-3144 (Fax)
Email: dunne@pspclaw.com

A copy of the foregoing was mailed this 30th day of January 2020, to:

St. Louis-Kansas City Carpenters Regional Council
1401 Hampton Avenue
St. Louis, Missouri 63139
*Defendant*

11