UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARY MILLER, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | Case No. 4:20-CV-00175 SEP |
| vs. | ) | |
| | ) | |
| | ) | |
| UNITED BROTHERHOOD OF | ) | |
| CARPENTERS AND JOINERS OF | | |
| AMERICA | | |
| | | |
| and | | |
| | ) | |
| ST. LOUIS-KANSAS CITY CARPENTERS | ) | |
| REGIONAL COUNCIL | ) | |
| | ) | |
|     Defendants. | ) | |

## *PLAINTIFF MARY MILLER'S FIRST*
## *AMENDED COMPLAINT*
## *FOR AGE DISCRIMINATION*

COMES NOW Plaintiff, Mary Miller, ("Plaintiff") by and through the undersigned counsel, and for her First Amended Complaint and Jury Demand ("Amended Complaint") against Defendants United Brotherhood of Carpenters and Joiners of America and St. Louis-Kansas City Carpenters Regional Council ("Defendants") states as follows:

The following allegations are based on personal knowledge as to Plaintiff's own conduct and on her information and belief as to the acts of others.

EXHIBIT 2

## *INTRODUCTION*

1.  This is a civil action challenging the Defendants' unlawful age discrimination with respect to the termination of Plaintiff from her employment, and with respect to the Defendants' past and continuing unlawful employment practices.

2.  The Plaintiff worked as a front-office receptionist for Defendant St. Louis-Kansas City Carpenters Regional Council at its St. Louis office for over fifteen years. In December 2014, without legitimate justification or just cause, the Plaintiff was given the option of either accepting a demotion to part-time employment status, or face termination by Defendant.

3.  The Plaintiff was terminated from her employment with Defendants on February 16, 2018, along with two other front-office employees who were over the age of sixty. Defendant St. Louis-Kansas City Carpenters Regional Council provided no explanation for Plaintiff's termination beyond "part time isn't working out."

4.  The Plaintiff never received any adverse performance evaluations during her employment with the Defendant St. Louis-Kansas City Carpenters Regional Council.

5.  At the time of her termination, Plaintiff was seventy years old.

6.  The termination of the Plaintiff was pretextual and was carried out in order to discriminate against Plaintiff by reason of her age.

7.  Defendant St. Louis- Kansas City Carpenters Regional Council deliberately singled Plaintiff out for termination due to her age, and replaced her with multiple, younger employees, who were hired to carry out the same responsibilities as the Plaintiff.  This termination was based on discriminatory bias against Plaintiff due to her age, in violation of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634.

8.     Further, Defendant St. Louis-Kansas City Carpenters Regional Council arbitrarily demoted Plaintiff to part-time employment status without reasonable justification or just cause, and without even attempting to justify the demotion, after Plaintiff had worked with Defendant St. Louis-Kansas City Carpenters Regional Council for over twelve years.

9.     Defendant St. Louis-Kansas City Carpenters Regional Council did not demote similarly situated, younger employees to part-time status.

10.    This conduct and practice constitutes disparate treatment of Plaintiff on the basis of age, which is also prohibited under the ADEA.

11.    Upon information and belief, at all relevant times, Defendant United Brotherhood of Carpenters and Joiners of America was directly responsible for enforcing the compliance by Defendant St. Louis-Kansas City Carpenters Regional Council with the United Brotherhood of Carpenters' Constitution and uniform bylaws of the Union.

12.    Defendant United Brotherhood of Carpenters and Joiners of America reserved the right to terminate senior officers of Defendant St. Louis-Kansas City Carpenters Regional Council for managerial actions that undermined the welfare of the United Brotherhood of Carpenters.

13.    Defendant United Brotherhood of Carpenters and Joiners of America reserved the right to suspend local unions or Regional Councils organized by Defendant United Brotherhood of Carpenters and Joiners of America including Defendant St. Louis-Kansas City Carpenters Regional Council for violations of the union's Constitution, union laws or principles, or for acting in a manner to undermine the Defendant United Brotherhood of Carpenters and Joiners of America's welfare.

3

14.  Defendant United Brotherhood of Carpenters and Joiners of America reserved the right to seize possession of all records maintained by local union affiliates and subsidiary Regional Councils per the terms of its Constitution.

15.  Defendant St. Louis-Kansas City Carpenters Regional Council was governed by the uniform bylaws of the Defendant United Brotherhood of Carpenters and Joiners of America, and laws and trade rules promulgated by Defendant St. Louis-Kansas City Carpenters Regional Council were subject to the approval of officers employed by Defendant United Brotherhood of Carpenters and Joiners of America.

16.  Upon information and belief, the Defendant United Brotherhood of Carpenters and Joiners of America was aware or should have been aware of numerous instances of both sexual harassment and age discrimination perpetrated on multiple union employees by officers employed by Defendant St. Louis-Kansas City Carpenters Regional Council between December, 2014 and February, 2018.

17.  Upon information and belief, Defendant United Brotherhood of Carpenters and Joiners of America acquiesced in, ratified or tacitly approved discriminatory policies of Defendant St. Louis-Kansas City Carpenters Regional Council on multiple occasions between December 2014 and February 2018.

18.  Plaintiff brings this action seeking an order awarding her back pay for the wages she would have received, but for the Defendants wrongful and discriminatory conduct, in violation of law, had the Defendants not terminated her using discriminatory practices in violation of the ADEA, and for the Defendant's unlawful and discriminatory treatment of Plaintiff culminating in lost wages, termination and general damages for emotional distress.

4

*PARTIES*

19.   Plaintiff Mary Miller is a 72-year-old resident of St. Louis, Missouri. Plaintiff was hired by the Defendant on February 3, 2003 to serve as a front-office receptionist with the Defendant's St. Louis office. Throughout her employment with Defendant, Plaintiff carried out her duties in an exemplary manner to the benefit of the Defendant and never had an adverse employment evaluation.

20.   Defendant St. Louis-Kansas City Carpenters Regional Council is a trade union for carpenters with over 20,000 members and thirty-four Local Unions representing Missouri, Kansas and Southern Illinois, and headquartered in the St. Louis, Missouri office where Plaintiff was employed.

21.   Defendant United Brotherhood of Carpenters and Joiners of America is an international labor union with over 520,000 members in North America, headquartered in Washington, D.C.

*JURISDICTION AND VENUE*

22.   This case is brought under the ADEA, 29 U.S.C. § 621 *et seq*. Thus, this Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(4).

23.   Plaintiff Mary Miller was hired by Defendant St. Louis-Kansas City Carpenters Regional Council (hereinafter "Defendant Regional Council") in the city of St. Louis, Missouri, and worked for the Regional Council throughout the entire course of her employment in St. Louis, Missouri.

24. At all relevant times, the Defendant Regional Council was organized as a subsidiary organization of the Defendant United Brotherhood of Carpenters and Joiners of America (hereinafter "the Defendant Union").

25. Venue is proper in the Eastern Division because all of the wrongful acts and omissions from which Plaintiff's cause of action arises occurred within this Division. Venue is also proper in this Division because the Defendant Regional Council is subject to personal jurisdiction in this Division, and therefore "resides" in this Division for venue purposes. 28 U.S.C. § 1391(c).

26. Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), and the EEOC issued a timely Charge of Discrimination on July 17, 2018. *See* Plaintiff's Exhibit A.

*FACTS*

27. The Plaintiff was hired by the Defendant Regional Council as a full-time front-office receptionist on February 3, 2003. Plaintiff's responsibilities in this position included general administrative duties, collecting union dues from members, answering office phones, drafting weekly and monthly letters on behalf of union officers, and accounting for office supplies.

28. On or about December 19, 2014, after eleven years full time employment, the then-current office manager, known to Plaintiff as "Ginger," approached Plaintiff and asked her "[H]ave you thought about going part time?"

29. When Plaintiff resisted the suggestion, the office manager explained to Plaintiff that she had the choice of choosing "between part-time and no time." Plaintiff was then demoted to part time employment status by the Defendant Regional Council. Defendant did not

6

provide any performance based reason or any further explanation justifying why Plaintiff was demoted to part-time status.

30.   Based on Plaintiff's best knowledge, information and belief, the Plaintiff was the only employee at Defendant Regional Council's headquarters office who was demoted to part-time employment in December, 2014.

31.   Immediately following her demotion to part-time status, Plaintiff's hours were reduced from forty hours per week to twenty eight and a half hours per week.

32.   Between the time of her demotion and her termination in February 2018, Plaintiff earned approximately $23.20 per hour.

33.   The Defendant Regional Council employed thirteen total receptionists, several of whom were below the age of forty, and all but two of whom worked at full-time employment status, at the executive office building in St. Louis where Plaintiff was employed.

34.   At the time Plaintiff was demoted, two other front-office receptionists, Maureen Lordo and Peggy Gabala were already working at part-time employment status.

35.   On February 13, 2018, Albert Bond, Executive Secretary Treasurer for the Defendant Regional Council, informed Plaintiff that "part time didn't seem to be working out" and that the Defendant Regional Council was "going in a different direction." The Plaintiff was informed that she was being terminated and that all part-time front-office receptionist positions were also being terminated. Albert Bond represented to Plaintiff that "we love ya [sic]" at the time Plaintiff was terminated.

36.   Maureen Lordo and Peggy Gabala were also terminated on the same day, immediately after Plaintiff was notified of her termination. These two employees were aged sixty (60) and sixty-one (61) years old, respectively, at the time they were terminated.

{02344012.DOCX;1}

37.   Plaintiff was asked to consider signing a "Separation Agreement" with a human resources representative of the Defendant Regional Council on the day that she was notified of her termination. On Plaintiff's information and belief, this "Separation Agreement" contained language which could be construed as a release of claims. Defendant Regional Council employee Albert Bond indicated that Defendant Regional Council did not expect Plaintiff to work through the remainder of the work week, however, Plaintiff should take the remainder of the work week to review and then to sign the Separation Agreement.

38.   On or about Saturday, February 17, 2018, a human resources employee of the Defendant Regional Council contacted Plaintiff via telephone, and communicated to Plaintiff that her four weeks' severance pay from the Defendant Regional Council was *conditioned* on her signing of the "Separation Agreement." The human resources employee of the Defendant Regional Council demanded that Plaintiff submit a signed "separation agreement" document to the Defendant Regional Council not later than 7:00 a.m., February 19, 2018. Plaintiff was obligated to meet with the human resources employee on an off-ramp of the I-55 interstate freeway in order to timely meet Defendant Regional Council's time limit demand and as a condition of receiving her four weeks' severance pay.

39.   Having demoted Plaintiff to part-time status roughly three years before, Defendant Regional Council was aware that Plaintiff earned approximately $34,000 per year at the time she was terminated.

40.   At no time between February 13 through February 17, 2018, or at any time before or after, was Plaintiff afforded an opportunity to negotiate the conditioning of her severance pay on her signing of the "Separation Agreement." Plaintiff was not afforded the

8

opportunity to negotiate the duration (or, as a consequence, the amount) of severance pay offered as consideration for the "Separation Agreement."

41.     On Plaintiff's information and belief, Defendant Regional Council's policy and custom was to offer four weeks of severance pay to employees terminated without cause.

42.     On Plaintiff's information and belief, it was not generally Defendant Regional Council's policy or custom to mandate or condition issuance of severance pay on the signing of a "Separation Agreement" as was true in Plaintiff's case.

43.     On Plaintiff's information and belief, Defendant Regional Council similarly conditioned severance pay on the acceptance of a separation agreement in the case of the other two front-office receptionists who were also terminated on February 13, 2018.

44.     On Plaintiff's information and belief, Defendant Regional Council similarly conditioned severance pay or benefits on the acceptance of a separation agreement waiving statutory rights to discrimination claims in instances where female employees over the age of 40 were terminated in several instances *prior to* and after February 13, 2018.

45.     At no time on or subsequent to February 13, 2018, was Plaintiff provided any work based justification or explanation for her termination that concerned or related to her performance as an employee of Defendant, or that explained the basis for her termination, beyond the remark by Albert Bond that "part time wasn't working out."

46.     On Plaintiff's knowledge and belief, Defendant Regional Council employee Albert Bond hired two employees to fulfill the duties and responsibilities for which Plaintiff was previously responsible, within approximately two weeks of Plaintiff's termination.

47.     On Plaintiff's knowledge and belief, both of the new hires who assumed Plaintiff's responsibilities were employees under the age of thirty.

9

### COUNT I—UNLAWFUL TERMINATION OF PLAINTIFF BASED ON AGE DISCRIMINATION IN VIOLATION OF ADEA, *29 U.S.C. § 621 et seq.*

48.    Plaintiff incorporates Paragraphs 1-38 fully as though restated herein.

49.    Plaintiff was employed by Defendant Regional Council from February 3, 2003 until February 13, 2018.

50.    Defendant Regional Council qualified as an employer in accordance with 29 U.S.C. § 630(b), insofar as Defendant Regional Council was a person employing more than twenty employees at all times relevant to this suit.

51.    The Defendant Union was an organization that managed, organized, influenced and controlled the direction of the Defendant Regional Council, and therefore maintained an agency relationship with the Defendant Regional Council.

52.    The Defendant Union was aware, or should have been aware, of disciplinary actions and hiring and firing decisions made by Defendant Regional Council officers in contravention of Defendant Union's bylaws or principles.

53.    Plaintiff was a member of a protected group, in that she was over forty years of age at all times relevant to this suit.

54.    Defendant Regional Council never notified Plaintiff that she was not fulfilling the Defendants' legitimate expectations for her service as an employee, as Plaintiff never received any adverse performance evaluation or counseling between December, 2013 and her demotion to part-time status in December, 2014. Instead, the Plaintiff was provided with an ultimatum of either accepting a demotion to part-time status, or facing termination at that time.

10

{02344012.DOCX;1}

55.    Plaintiff received no adverse performance evaluations or feedback from Defendant between December, 2014 and the date of her termination on February 13, 2018. Defendant's agent and representative Mr. Bond represented to Plaintiff that "we love ya" and "we're going in a different direction" at the time she was terminated.

56.    Defendant Regional Council terminated Plaintiff's employment on February 13, 2018.

57.    But for her age at the time she was demoted and then fired, Plaintiff would not have been terminated.

58.    Defendant Regional Council terminated Plaintiff under circumstances giving rise to an legitimate inference of age discrimination. Defendant Regional Council provided as the basis for her termination that "part time wasn't working out." Defendant Regional Council exercised its own discretion in demoting her to part-time status without providing any justification for the demotion beyond office manager "Ginger's" remark "have you thought about going part-time?" At the time that Plaintiff was demoted, in December 2014, she was the only employee in the front-office over the age of sixty who was not already working part-time. However, at the time of her termination, only the Plaintiff, Maureen Lordo and Peggy Gabala were targeted for termination, all three of whom were over the age of 60, and all three terminations were justified on the basis that "part-time isn't working out."

59.    Defendant Regional Council did not characterize Plaintiff's termination as "performance-related." Ordinarily, such a termination could be described as a "reduction in force." However, Plaintiff is aware that her job responsibilities were *replaced* by two newly-hired employees within two weeks of her termination, and *both* of the new employees were under the age of forty.

11

60.   Defendant Regional Council's efforts to coerce Plaintiff to sign a "separation agreement" including "release of claims" language, conditioning four weeks' severance pay for a fifteen-year employee on accepting the "separation agreement," and providing Plaintiff all of five days' opportunity to consider the "separation agreement" supports the inference of the Defendants' discriminatory intent.

61.   Defendant's means of obtaining Plaintiff's agreement did not permit Plaintiff to enter into a "knowing and voluntary" release of her ADEA rights in accordance with the Older Workers Benefit Protection Act. Plaintiff was never told by any agent of Defendant that she would release rights or claims arising under the ADEA by entering into such an agreement, or that her severance pay was conditioned on such an agreement to waiver her rights.

62.   Plaintiff was never afforded the opportunity to negotiate the terms of the waiver, or the duration of her entitlement to severance pay in exchange for the "release of claims" waiver, or even whether severance could be negotiated independently of the "release of claims" waiver.

63.   Plaintiff was not afforded a sufficient opportunity to consult an attorney. Plaintiff was never provided a revocation period of *any* duration, and most importantly, Plaintiff's five-day period to consider the agreement was grossly insufficient, with a deliberately calculated, coercive effect on Plaintiff. The circumstances surrounding Plaintiff's termination support not only an inference of age discrimination, but also the calculated effort to wrongfully preclude Defendant's liability for that age discrimination.

64.   The Defendant Union controlled the conduce of Defendant Regional Counsel, and had either actual or constructive notice of the discriminatory activities listed in Plaintiff's

Amended Complaint, and ratified or tacitly approved the discriminatory actions of Defendant Regional Council despite Defendant Union's awareness of repeated instances of Defendant Regional Council employees' complaints of discriminatory treatment between December, 2014 and February, 2018.

65.     Further, as the controlling organization with actual or constructive notice of the discriminatory activities of Defendant Regional Council, the Defendant Union failed to act to prevent the age discrimination against Plaintiff in contravention of the Age Discrimination in Employment Act.

WHEREFORE, Plaintiff Mary Miller prays for:

A.     Lost wages and other compensation lost to her as a result of the Defendants' discrimination based on Plaintiff's age, and prejudgment interest; .

B.     Liquidated damages doubling the award of interest and lost wages, lost to Plaintiff as a result of the Defendants' discrimination on the basis of her age;

C.     Reasonable attorney's fees, expert witness fees, expenses and costs of this action and of prior administrative actions; and

D.     Such other relief that this Court deems just and proper.

### COUNT II—UNLAWFUL AGE DISCRIMINATION BASED ON PRACTICE OF DISPARATE TREATMENT OF PLAINTIFF IN VIOLATION OF ADEA, 29 U.S.C. § 621 et. seq.

66.     Plaintiff incorporates Paragraphs 1-57 as though fully restated herein.

67.     Defendant Regional Council never provided Plaintiff either an explanation or justification for Plaintiff's demotion to part-time status in December 2014. Defendant Regional Council never explained or justified to Plaintiff why Plaintiff's further employment with

13

Defendant Regional Council was conditioned on the demotion to part-time status before, during, or after the December 2014 demotion.

68.   At the time of her demotion, Plaintiff was the only front-office receptionist employed by Defendant Regional Council and who was over the age of sixty, who was *not* already employed at part-time status.

69.   Plaintiff was the *only* front-office employee demoted to part-time status at that time.

70.   No front-office receptionist employed by Defendant Regional Council and *under* the age of forty was demoted by Defendant to part-time status at any time during Plaintiff's course of employment with the Defendant.

71.   When Plaintiff was subsequently terminated, Defendant Regional Council represented that the sole justification for Plaintiff's termination was that "part-time wasn't working out."

72.   Plaintiff was one of three front-office receptionist employees terminated on the same day. All three employees terminated by Defendant on February 13, 2018 were part-time employees, and all three were over the age of sixty.

73.   As stated above, Plaintiff's responsibilities were subsequently transferred to *two* newly hired employees, both of whom were under the age of forty, and both of whom were hired to perform those duties *full-time*.

74.   Plaintiff was spontaneously and inexplicably demoted to part-time status, at a point in time when every other member of her protected group, working in the front-office of Defendant Regional Council's headquarters as receptionists, was already working at part-time status.

14

75.   Three years later, Defendant justified its eventual termination of Plaintiff on the basis that "part-time wasn't working out" without any legitimate business reason. The Defendant Regional Council had also demoted Plaintiff to part-time status without providing any legitimate business reason for doing so.

76.   Within weeks, Defendant hired two new employees to replace Plaintiff. Both of these employees were under the age of forty, and both of these employees were hired to work full-time.

77.   The circumstances culminating in Plaintiff's termination support the inference that Plaintiff was terminated due to an ongoing practice by Defendant Regional Council targeting elderly employees for termination and adverse employment action based on age discrimination.

78.   That the continuing practice of Defendant Regional Counsel included the deliberate targeting of elderly employees for termination based on age and based on their previously compelled part-time employment status for eventual termination based on age.

79.   That the continuing practice of Defendant Regional Counsel included the coercive use of "Separation Agreements" requiring the waiver of legal and statutory rights to pursue claims for age discrimination or sexual harassment in order to prevent and to deliberately discourage terminated employees from pursuing meritorious claims based on employment discrimination.

80.   That the Defendant Union was aware or should have been aware of the use of this continuing and longstanding policy of discrimination by Defendant Regional Council.

15

WHEREFORE, Plaintiff Mary Miller prays the Court enter its order and award her:

A.      Lost wages and other compensation lost to her as a result of the Defendants' disparate treatment based on Plaintiff's age, and prejudgment interest;

B.      Liquidated damages doubling the award of interest and lost wages, lost to Plaintiff as a result of the Defendants' disparate treatment on the basis of her age;

C.      Reasonable attorney's fees, expert witness fees, expenses and costs of this action and of prior administrative actions; and

D.      Such other relief that this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury of all issues so triable in this action.

/s/ Peter J. Dunne
Peter J. Dunne  #31482MO
Lars T. Knutson   #71332MO
PITZER SNODGRASS, P.C.
Attorney for Defendant
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
(314) 421-3144 (Fax)
Email: Dunne@pspclaw.com
Email: knutson@pspclaw.com

16

{02344012.DOCX;1}

I, the undersigned, certify that copy of the foregoing has been electronically served on all counsel of record via the Court's CM/ECF system, or U.S. mail for parties not registered with CM/ECF, on this 14th day of August, 2020:

Greg A. Campbell
Brandon M. Hall
Hammond and Shinners, P.C.
13205 Manchester Road, Suite. 210
St. Louis, Missouri 61313
gcampbell@hammondshinners.com
bhall@hammondshinners.com
*Attorneys for Defendant St. Louis-Kansas City*
*Carpenters Regional Council*

Under penalties of perjury as provided by law, I certify that the statements in this affidavit are true.

/s/ Peter J. Dunne

17

{02344012.DOCX;1}

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | E-07/18- 49752 |
| | [X] EEOC | 28E-2018-01304C |

| Missouri Commission On Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Ms. Mary Miller** | **314-740-4657** | **9/11/1947** |

| Street Address | City, State and ZIP Code | County |
|---|---|---|
| **10155 Florinda Drive, St. Louis, Missouri, 63123** | | St. Louis |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **St. Louis – Kansas City Carpenters Regional Council** | **15+** | **314-644-4800** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1401 Hampton Ave, St. Louis, Missouri, 63139** | |

DISCRIMINATION BASED ON (Check appropriate box (es).)

[ ] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN

[ ] RETALIATION   [X] AGE   [ ] DISABILITY   [ ] OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE

**12/2014**        **2/13/2018**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The Complainant (Age 71) was discharged on 2/13/2018 after being demoted in December of 2014 from full time to part time. The same day the Complainant was fired 2 other similarly aged employees were also fired. The Complainant and her similarly aged coworkers were replaced by new employees that were around 30 years old.

The Complainant alleges she was unfairly discharged due to her age, 71:

1. Complainant was discharged even though she was told by Respondent she was a good employee
2. 2 other similarly aged employees were fired on the same day
3. Complainant and the other discharged employees were replaced by significantly younger people

As remedy, I desire an end to the discrimination and anything else the Commission deems just and proper.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| x 7/16/2018          x Mary Margaret Miller | FILED JUL 17 2018 MO Commission on Human Rights Jefferson City Office |
| Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EXHIBIT A