**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MARY MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:20-CV-00175 SEP |
| | ) |
| UNITED BROTHERHOOD OF CARPENTERS | ) |
| AND JOINERS OF AMERICA, | ) |
| | ) |
| and | ) |
| | ) |
| ST. LOUIS-KANSAS CITY CARPENTERS | ) |
| REGIONAL COUNCIL, | ) |
| | ) |
| Defendants. | ) |

<u>**ANSWER AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT**</u>

COMES NOW Defendant St. Louis-Kansas City Carpenters Regional Council ("Council"), by and through the undersigned counsel, and for its Answer and Affirmative Defenses to First Amended Complaint, states as follows:

1.      This is a civil action challenging the Defendants' unlawful age discrimination with respect to the termination of Plaintiff from her employment, and with respect to the Defendants' past and continuing unlawful employment practices.

**ANSWER:  Paragraph 1 states a legal conclusion to which no response is required.  To the extent a response is required, Council denies the allegations in Paragraph 1.**

2.      The Plaintiff worked as a front-office receptionist for Defendant St. Louis-Kansas City Carpenters Regional Council at its St. Louis office for over fifteen years.  In December 2014, without legitimate justification or just cause, the Plaintiff was given the option of either accepting a demotion to part-time employment status, or face termination by Defendant.

**ANSWER:  The Council denies the allegations in Paragraph 2.**

3.      The Plaintiff was terminated from her employment with Defendants on February 16, 2018, along with two other front-office employees who were over the age of sixty. Defendant St. Louis-Kansas City Carpenters Regional Council provided no explanation for Plaintiff's termination beyond "part time isn't working out."

**ANSWER:  The Council denies the allegations in Paragraph 3.**

4.      The Plaintiff never received any adverse performance evaluations during her employment with the Defendant St. Louis-Kansas City Carpenters Regional Council.

**ANSWER:  The Council denies the allegations in Paragraph 4.**

5.      At the time of her termination, Plaintiff was seventy years old.

**ANSWER:  The Council denies the allegations in Paragraph 5.**

6.      The termination of the Plaintiff was pretextual and was carried out in order to discriminate against Plaintiff by reason of her age.

**ANSWER:  The Council denies the allegations in Paragraph 6.**

7.      Defendant St. Louis-Kansas City Carpenters Regional Council deliberately singled Plaintiff out for termination due to her age, and replaced her with multiple, younger employees, who were hired to carry out the same responsibilities as the Plaintiff.   This termination was based on discriminatory bias against Plaintiff due to her age, in violation of the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634.

**ANSWER:  The Council denies the allegations in Paragraph 7.**

8.      Further, Defendant St. Louis-Kansas City Carpenters Regional Council arbitrarily demoted Plaintiff to part-time employment status without reasonable justification or just cause,

and without even attempting to justify the demotion, after Plaintiff had worked with Defendant St. Louis-Kansas City Carpenters Regional Council for over twelve years.

**ANSWER:  The Council denies the allegations in Paragraph 8.**

9.     Defendant St. Louis-Kansas City Carpenters Regional Council did not demote similarly situated, younger employees to part-time status.

**ANSWER:  The Council denies the allegations in Paragraph 9.**

10.     This conduct and practice constitutes disparate treatment of Plaintiff on the basis of age, which is also prohibited under the ADEA.

**ANSWER:  The Council denies the allegations in Paragraph 10.**

11.     Upon information and belief, at all relevant times, Defendant United Brotherhood of Carpenters and Joiners of America was directly responsible for enforcing the compliance by Defendant St. Louis-Kansas City Carpenters Regional Council with the United Brotherhood of Carpenters' Constitution and uniform bylaws of the Union.

**ANSWER:  The Council denies the allegations in Paragraph 11.**

12.     Defendant United Brotherhood of Carpenters and Joiners of America reserved the right to terminate senior officers of Defendant St. Louis-Kansas City Carpenters Regional Council for managerial actions that undermined the welfare of the United Brotherhood of Carpenters.

**ANSWER:  The Council denies the allegations in Paragraph 12.**

13.     Defendant United Brotherhood of Carpenters and Joiners of America reserved the right to suspend local unions or Regional Councils organized by Defendant United Brotherhood of Carpenters and Joiners of America including Defendant St. Louis-Kansas City Carpenters Regional Council for violations of the union's Constitution, union laws or principles, or for

acting in a manner to undermine the Defendant United Brotherhood of Carpenters and Joiners of America's welfare.

**ANSWER:  The Council denies the allegations in Paragraph 13.**

14.    Defendant United Brotherhood of Carpenters and Joiners of America reserved the right to seize possession of all records maintained by local union affiliates and subsidiary Regional Councils per the terms of its Constitution.

**ANSWER:  The Council denies the allegations in Paragraph 14.**

15.    Defendant St. Louis-Kansas City Carpenters Regional Council was governed by the uniform bylaws of the Defendant United Brotherhood of Carpenters and Joiners of America, and laws and trade rules promulgated by Defendant St. Louis-Kansas City Carpenters Regional Council were subject to the approval of officers employed by Defendant United Brotherhood of Carpenters and Joiners of America.

**ANSWER:  The Council denies the allegations in Paragraph 15.**

16.    Upon information and belief, the Defendant United Brotherhood of Carpenters and Joiners of America was aware or should have been aware of numerous instances of both sexual harassment and age discrimination perpetrated on multiple union employees by officers employed by Defendant St. Louis-Kansas City Carpenters Regional Council between December, 2014 and February, 2018.

**ANSWER:  The Council denies the allegations in Paragraph 16.**

17.    Upon information and belief, Defendant United Brotherhood of Carpenters and Joiners of America acquiesced in, ratified or tacitly approved discriminatory policies of Defendant St. Louis-Kansas City Carpenters Regional Council on multiple occasions between December 2014 and February 2018.

**ANSWER:  The Council denies the allegations in Paragraph 17.**

18.     Plaintiff brings this action seeking an order awarding her back pay for the wages she would have received, but for the Defendants wrongful and discriminatory conduct, in violation of law, had the Defendants not terminated her using discriminatory practices in violation of the ADEA, and for the Defendant's unlawful and discriminatory treatment of Plaintiff culminating in lost wages, termination and general damages for emotional distress.

**ANSWER:  The Council denies the allegations in Paragraph 18.**

19.     Plaintiff Mary Miller is a 72-year-old resident of St. Louis, Missouri.  Plaintiff was hired by the Defendant on February 3, 2003 to serve as a front-office receptionist with the Defendant's St. Louis office.  Throughout her employment with Defendant, Plaintiff carried out her duties in exemplary manner to the benefit of the Defendant and never had an adverse employment evaluation.

**ANSWER:   The Council is without sufficient information to form a belief as to the allegation that Plaintiff is a 72-year-old resident of St. Louis, Missouri.  The Council denies the remaining allegations in Paragraph 19.**

20.     Defendant St. Louis-Kansas City Carpenters Regional Council is a trade union for carpenters with over 20,000 members and thirty-four Local Unions representing Missouri, Kansas and Southern Illinois, and headquartered in the St. Louis, Missouri office where Plaintiff was employed.

**ANSWER:  Admit.**

21.     Defendant United Brotherhood of Carpenters and Joiners of America is an international labor union with over 520,000 members in North America, headquartered in Washington, D.C.

**ANSWER:  The Council is without sufficient information to form a belief as to the truth of the matters alleged in Paragraph 21 and therefore denies the same.**

22.     This case is brought under the ADEA, 29 U.S.C. § 621 *et seq*.  Thus, this Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(4).

**ANSWER:  Paragraph 22 states a legal conclusion to which no response is required.  To the extent a response is required, the Council denies the allegations in Paragraph 22.**

23.     Plaintiff Mary Miller was hired by Defendant St. Louis-Kansas City Carpenters Regional Council (hereinafter "Defendant Regional Council") in the city of St. Louis, Missouri and worked for the Regional Council throughout the entire course of her employment in St. Louis, Missouri.

**ANSWER:  The Council denies the allegations in Paragraph 23.**

24.     At all relevant times, the Defendant Regional Council was organized as a subsidiary organization of the Defendant United Brotherhood of Carpenters and Joiners of America (hereinafter "the Defendant Union").

**ANSWER:  Paragraph 24 states a legal conclusion to which no response is required.  To the extent a response is required, the Council denies the allegations in Paragraph 24.**

25.     Venue is proper in the Eastern Division because all of the wrongful acts and omissions from which Plaintiff's cause of action arises occurred within this Division.  Venue is also proper in this Division because the Defendant Regional Council is subject to personal jurisdiction in this Division, and therefore "resides" in this Division for venue purposes.  28 U.S.C. § 1391(c).

**ANSWER:  Paragraph 25 states a legal conclusion to which no response is required.  To the extent a response is required, the Council denies the allegations in Paragraph 25.**

26.     Plaintiff timely filed her Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), and the EEOC issued a timely Charge of Discrimination on July 17, 2018.  *See* Plaintiff's Exhibit A.

**ANSWER:  Paragraph 26 states a legal conclusion to which no response is required.  To the extent a response is required, the Council denies the allegations in Paragraph 26.**

27.     The Plaintiff was hired by the Defendant Regional Council as a full-time front-office receptionist on February 3, 2003.  Plaintiff's responsibilities in this position included general administrative duties, collecting union dues from members, answering office phones, drafting weekly and monthly letters on behalf of union officers, and accounting for office supplies.

**ANSWER.  The Council denies the allegations in Paragraph 27.**

28.     On or about December 19, 2014, after eleven years full time employment, the then-current office manager, known to Plaintiff as "Ginger," approached Plaintiff and asked her "[H]ave you thought about going part time?"

**ANSWER:  The Council denies the allegations in Paragraph 28.**

29.     When Plaintiff resisted the suggestion, the office manager explained to Plaintiff that she had the choice of choosing "between part-time and no time."  Plaintiff was then demoted to part time employment status by the Defendant Regional Council.  Defendant did not provide any performance based reason or any further explanation justifying why Plaintiff was demoted to part-time status.

**ANSWER:  The Council denies the allegations in Paragraph 29.**

30.     Based on Plaintiff's best knowledge, information and belief, the Plaintiff was the only employee at Defendant Regional Council's headquarters office who was demoted to part-time employment in December, 2014.

**ANSWER:  The Council denies the allegations in Paragraph 30.**

31.     Immediately following her demotion to part-time status, Plaintiff's hours were reduced from forty hours per week to twenty eight and a half hours per week.

**ANSWER:  The Council denies the allegations in Paragraph 31.**

32.     Between the time of her demotion and her termination in February 2018, Plaintiff earned approximately $23.20 per hour.

**ANSWER:  The Council denies the allegations in Paragraph 32.**

33.     The Defendant Regional Council employed thirteen total receptionists, several of whom were below the age of forty, and all but two of whom worked at full-time employment status, at the executive office building in St. Louis where Plaintiff was employed.

**ANSWER:  The Council denies the allegations in Paragraph 33.**

34.     At the time Plaintiff was demoted, two other front-office receptionists, Maureen Lordo and Peggy Gabala were already working at part-time employment status.

**ANSWER:  The Council denies the allegations in Paragraph 34.**

35.     On February 13, 2018, Albert Bond, Executive Secretary Treasurer for the Defendant Regional Council, informed Plaintiff that "part time didn't seem to be working out" and that the Defendant Regional Council was "going in a different direction."  The Plaintiff was informed that she was being terminated and that all part-time front-office receptionist positions were also being terminated.  Albert Bond represented to Plaintiff that "we love ya [sic]" at the time Plaintiff was terminated.

8

**ANSWER:  The Council denies the allegations in Paragraph 35.**

36.     Maureen Lordo and Peggy Gabala were also terminated on the same day, immediately after Plaintiff was notified of her termination.  These two employees were aged sixty (60) and sixty-one (61) years old, respectively, at the time they were terminated.

**ANSWER:  The Council denies the allegations in Paragraph 36.**

37.     Plaintiff was asked to consider signing a "Separation Agreement" with a human resources representative of the Defendant Regional Council on the day that she was notified of her termination.  On Plaintiff's information and belief, this "Separation Agreement" contained language which could be construed as a release of claims.  Defendant Regional Council employee Albert Bond indicated that Defendant Regional Council did not expect Plaintiff to work through the remainder of the work week, however, Plaintiff should take the remainder of the work week to review and then to sign the Separation Agreement.

**ANSWER:  The Council admits that Plaintiff was offered an agreement that contained a release of claims.  The Council denies the remaining allegations in Paragraph 37.**

38.     On or about Saturday, February 17, 2018, a human resources employee of the Defendant Regional Council contacted Plaintiff via telephone, and communicated to Plaintiff that her four weeks' severance pay from the Defendant Regional Council was *conditioned* on her signing of the "Separation Agreement."   The human resources employee of the Defendant Regional Council demanded that Plaintiff submit a signed "separation agreement" document to the Defendant Regional Council not later than 7:00 a.m., February 19, 2018.  Plaintiff was obligated to meet with the human resources employee on an off-ramp of the I-55 interstate freeway in order to timely meet Defendant Regional Council's time limit demand and as a condition of receiving her four weeks' severance pay.

9

**ANSWER:  The Council denies the allegations in Paragraph 38.**

39.     Having demoted Plaintiff to part-time status roughly three years before, Defendant Regional Council was aware that Plaintiff earned approximately $34,000 per year at the time she was terminated.

**ANSWER:  The Council denies the allegations in Paragraph 39.**

40.     At no time between February 13 through February 17, 2018, or at any time before or after, was Plaintiff afforded an opportunity to negotiate the conditioning of her severance pay on her signing of the "Separation Agreement."  Plaintiff was not afforded the opportunity to negotiate the duration (or, as a consequence, the amount) of severance pay offered as consideration for the "Separation Agreement."

**ANSWER:  The Council denies the allegations in Paragraph 40.**

41.     On Plaintiff's information and belief, Defendant Regional Council's policy and custom was to offer four weeks of severance pay to employees terminated without cause.

**ANSWER:  The Council denies the allegations in Paragraph 41.**

42.     On Plaintiff's information and belief, it was not generally Defendant Regional Council's policy or custom to mandate or condition issuance of severance pay on the signing of a "Separation Agreement" as was true in Plaintiff's case.

**ANSWER:  The Council denies the allegations in Paragraph 42.**

43.     On Plaintiff's information and belief, Defendant Regional Council similarly conditioned severance pay on the acceptance of a separation agreement in the case of the other two front-office receptionists who were also terminated on February 13, 2018.

**ANSWER:  The Council denies the allegations in Paragraph 43.**

44.     On Plaintiff's information and belief, Defendant Regional Council similarly conditioned severance pay or benefits on the acceptance of a separation agreement waiving statutory rights to discrimination claims in instances where female employees over the age of 40 were terminated in several instances *prior to* and after February 13, 2018.

**ANSWER:  The Council denies the allegations in Paragraph 44.**

45.     At no time on or subsequent to February 13, 201, was Plaintiff provided any work based justification or explanation for her termination that concerned or related to her performance as an employee of Defendant, or that explained the basis for her termination, beyond the remark by Albert Bond that "part time wasn't working out."

**ANSWER:  The Council denies the allegations in Paragraph 45.**

46.     On Plaintiff's knowledge and belief, Defendant Regional Council employee Albert Bond hired two employees to fulfill the duties and responsibilities for which Plaintiff was previously responsible, within approximately two weeks of Plaintiff's termination.

**ANSWER:  The Council denies the allegations in Paragraph 46.**

47.     On Plaintiff's knowledge and belief, both of the new hires who assumed Plaintiff's responsibilities were employees under the age of thirty.

**ANSWER:  The Council denies the allegations in Paragraph 47.**

### COUNT I – UNLAWFUL TERMINATION OF PLAINTIFF BASED ON AGE DISCRIMINATION IN VIOLATION OF ADEA, 29 U.S.C. § 621 et seq.

48.     Plaintiff incorporates Paragraphs 1-38 fully as though restated herein.

**ANSWER:  The Council incorporates its responses to Paragraphs 1 through 38 above as if fully set forth herein.**

49.     Plaintiff was employed by Defendant Regional Council from February 3, 2003 until February 13, 2018.

**ANSWER:  The Council denies the allegations in Paragraph 49.**

50.     Defendant Regional Council qualified as an employer in accordance with 29 U.S.C. § 630(b), insofar as Defendant Regional Council was a person employing more than twenty employees at all time relevant to this suit.

**ANSWER:  Paragraph 50 states a legal conclusion to which no response is required.  To the extent a response is required, the Council denies the allegations in Paragraph 50.**

51.     The Defendant Union was an organization that managed, organized, influenced and controlled the direction of the Regional Council, and therefore maintained an agency relationship with the Defendant Regional Council.

**ANSWER:  The Council denies the allegations in Paragraph 51.**

52.     The Defendant Union was aware, or should have been aware, of disciplinary actions and hiring and firing decisions made by Defendant Regional Council officers in contravention of Defendant Union's bylaws or principles.

**ANSWER:  The Council denies the allegations in Paragraph 52.**

53.     Plaintiff was a member of a protected group, in that she was over forty years of age at all times relevant to this suit.

**ANSWER:  Paragraph 53 states a legal conclusion to which no response is required.  To the extent a response is required, the Council denies the allegations in Paragraph 53.**

54.     Defendant Regional Council never notified Plaintiff that she was not fulfilling the Defendants' legitimate expectations for her service as an employee, as Plaintiff never received any adverse performance evaluation or counseling between December, 2013 and her demotion to part-time status in December, 2014.  Instead, the Plaintiff was provided with an ultimatum of either accepting a demotion to part-time status, or facing termination at that time.

12

**ANSWER:  The Council denies the allegations in Paragraph 54.**

55.     Plaintiff received no adverse performance evaluations or feedback from Defendant between December, 2014 and the date of her termination on February 13, 2018. Defendant's agent and representative Mr. Bond represented to Plaintiff that "we love ya" and we're going in a different direction" at the time she was terminated.

**ANSWER:  The Council denies the allegations in Paragraph 55.**

56.     Defendant Regional Council terminated Plaintiff's employment on February 13, 2018.

**ANSWER:  The Council denies the allegations in Paragraph 56.**

57.     But for her age at the time she was demoted and then fired, Plaintiff would not have been terminated.

**ANSWER:  The Council denies the allegations in Paragraph 57.**

58.     Defendant Regional Council terminated Plaintiff under circumstances giving rise to an legitimate inference of age discrimination.  Defendant Regional Council provided as the basis for her termination that "part time wasn't working out."   Defendant Regional Council exercised its own discretion in demoting her to part-time status without providing any justification for the demotion beyond office manager "Ginger's" remark "have you thought about going part-time?"  At the time that Plaintiff was demoted, in December 2014, she was the only employee in the front-office over the age of sixty who was not already working part-time. However, at the time of her termination, only the Plaintiff, Maureen Lordo and Peggy Gabala were targeted for termination, all three of whom were over the age of 60, and all three terminations were justified on the basis that "part-time isn't working out."

**ANSWER:  The Council denies the allegations in Paragraph 58.**

59.     Defendant Regional Council did not characterize Plaintiff's termination as "performance-related."  Ordinarily, such a termination could be described as a "reduction in force."  However, Plaintiff is aware that her job responsibilities were *replaced* by two newly-hired employees within two weeks of her termination, and *both* of the new employees were under the age of forty.

**ANSWER:  The Council denies the allegations in Paragraph 59.**

60.     Defendant Regional Council's efforts to coerce Plaintiff to sign a "separation agreement" including "release of claims" language, conditioning four weeks' severance pay for a fifteen-year employee on accepting the "separation agreement," and providing Plaintiff all of five days' opportunity to consider the "separation agreement" supports the inference of the Defendants' discriminatory intent.

**ANSWER:  The Council denies the allegations in Paragraph 60.**

61.     Defendant's means of obtaining Plaintiff's agreement did not permit Plaintiff to enter into a "knowing and voluntary" release of her ADEA rights in accordance with the Older Workers Benefit Protection Act.  Plaintiff was never told by any agent of Defendant that she would release rights or claims under the ADEA by entering into such an agreement, or that her severance pay was conditioned on such an agreement to waiver her rights.

**ANSWER:  The Council denies the allegations in Paragraph 61.**

62.     Plaintiff was never afforded the opportunity to negotiate the terms of the waiver, or the duration of her entitlement to severance pay in exchange for the "release of claims" waiver, or even whether severance could be negotiated independently of the "release of claims" waiver.

**ANSWER:  The Council denies the allegations in Paragraph 62.**

63.     Plaintiff was not afforded a sufficient opportunity to consult an attorney.  Plaintiff was never provided a revocation period of *any* duration, and most importantly, Plaintiff's five-day period to consider the agreement was grossly insufficient, with a deliberately calculated, coercive effect on Plaintiff.  The circumstances surrounding Plaintiff's termination support not only an inference of age discrimination, but also the calculated effort to wrongfully preclude Defendant's liability for that age discrimination.

**ANSWER:  The Council denies the allegations in Paragraph 63.**

64.     The Defendant Union controlled the conduce of Defendant Regional Counsel, and had either actual or constructive notice of the discriminatory activities listed in Plaintiff's Amended Complaint, and ratified or tacitly approved the discriminatory actions of Defendant Regional Council despite Defendant Union's awareness of repeated instances of Defendant Regional Council employees' complaints of discriminatory treatment between December, 2014 and February, 2018.

**ANSWER:  The Council denies the allegations in Paragraph 64.**

65.     Further, as the controlling organization with actual or constructive notice of the discriminatory activities of Defendant Regional Council, the Defendant Union failed to act to prevent the age discrimination against Plaintiff in contravention of the Age Discrimination in Employment Act.

**ANSWER:  The Council denies the allegations in Paragraph 65.**

WHEREFORE, Defendant St. Louis-Kansas City Carpenters Regional Council prays for this Court's Judgment and Order in favor of Defendant St. Louis-Kansas City Carpenters Regional Council and against Plaintiff Mary Miller on Count I of Plaintiff's Amended

Complaint, dismissing Count I with prejudice, and for such other and further relief as this Court deems just and proper.

### COUNT II – UNLAWFUL AGE DISCRIMINATION BASED ON PRACTICE OF DISPARATE TREATMENT OF PLAINTIFF IN VIOLATION OF ADEA, 29 U.S.C. § 621 et seq.

66.     Plaintiff incorporates Paragraphs 1-57 as though fully restated herein.

**ANSWER**:  **The Council incorporates its responses to Paragraphs 1-57 as if fully set forth herein.**

67.     Defendant Regional Council never provided Plaintiff either an explanation or justification for Plaintiff's demotion to part-time status in December 2014.  Defendant Regional Council never explained or justified to Plaintiff why Plaintiff's further employment with Defendant Regional Council was conditioned on the demotion to part-time status before, during, or after the December 2014 demotion.

**ANSWER:  The Council denies the allegations in Paragraph 67.**

68.     At the time of her demotion, Plaintiff was the only front-office receptionist employed by Defendant Regional Council and who was over the age of sixty, who was *not* already employed at part-time status.

**ANSWER:  The Council denies the allegations in Paragraph 68.**

69.     Plaintiff was the *only* front-office employee demoted to part-time status at that time.

**ANSWER:  The Council denies the allegations in Paragraph 69.**

70.     No front-office receptionist employed by Defendant Regional Council and *under* the age of forty was demoted by Defendant to part-time status at any time during Plaintiff's course of employment with the Defendant.

**ANSWER:  The Council denies the allegations in Paragraph 70.**

71.     When Plaintiff was subsequently terminated, Defendant Regional Council represented that the sole justification for Plaintiff's termination was that "part-time wasn't working out."

**ANSWER:  The Council denies the allegations in Paragraph 71.**

72.     Plaintiff was one of three front-office receptionist employees terminated on the same day.  All three employees terminated by Defendant on February 13, 2018 were part-time employees, and all three were over the age of sixty.

**ANSWER:  The Council denies the allegations in Paragraph 72.**

73.     As stated above, Plaintiff's responsibilities were subsequently transferred to *two* newly hired employees, both of whom were under the age of forty, and both of whom were hired to perform those duties *full-time*.

**ANSWER:  The Council denies the allegations in Paragraph 73.**

74.     Plaintiff was spontaneously and inexplicably demoted to part-time status, at a point in time when every other member of her protected group, working in the front-office of Defendant Regional Council's headquarters as receptionists, was already working at part-time status.

**ANSWER:  The Council denies the allegations in Paragraph 74.**

75.     Three years later, Defendant justified its eventual termination of Plaintiff on the basis that "part-time wasn't working out" without any legitimate business reason.  The Defendant Regional Council had also demoted Plaintiff to part-time status without providing any legitimate business reason for doing so.

**ANSWER:  The Council denies the allegations in Paragraph 75.**

76.     Within weeks, Defendant hired two new employees to replace Plaintiff.  Both of these employees were under the age of forty, and both of these employees were hired to work full-time.

**ANSWER:  The Council denies the allegations in Paragraph 76.**

77.     The circumstances culminating in Plaintiff's termination support the inference that Plaintiff was terminated due to an ongoing practice by Defendant Regional Council targeting elderly employees for termination and adverse employment action based on age discrimination.

**ANSWER:  The Council denies the allegations in Paragraph 77.**

78.     That the continuing practice of Defendant Regional Counsel included the deliberate targeting of elderly employees for termination based on age and based on their previously compelled part-time employment status for eventual termination based on age.

**ANSWER:  The Council denies the allegations in Paragraph 78.**

79.     That the continuing practice of Defendant Regional Counsel included the coercive use of "Separation Agreements" requiring the waiver of legal and statutory rights to pursue claims for age discrimination or sexual harassment in order to prevent and to deliberately discourage terminated employees from pursuing meritorious claims based on employment discrimination.

**ANSWER:  The Council denies the allegations in Paragraph 79.**

80.     That the Defendant Union was aware or should have been aware of the use of this continuing and longstanding policy of discrimination by Defendant Regional Council.

**ANSWER:  The Council denies the allegations in Paragraph 80.**

WHEREFORE, Defendant St. Louis-Kansas City Carpenters Regional Council prays for this Court's Judgment and Order in favor of Defendant St. Louis-Kansas City Carpenters

Regional Council and against Plaintiff Mary Miller on Count II of Plaintiff's Amended Complaint, dismissing Count II with prejudice, and for such other and further relief as this Court deems just and proper.

## **AFFIRMATIVE DEFENSES**

1.      Plaintiff's claims are further barred by the doctrines of waiver, release, and estoppel.  Plaintiff knowingly and voluntarily waived and released her claims, in accordance with 29 U.S.C. § 626(f), by knowingly and voluntarily executing the Settlement Agreement, Release and Waiver of Claims.

2.      Plaintiff's claims are further barred, or her damages reduced, by her failure to mitigate damages.  Plaintiff failed to make reasonable efforts to find suitable part-time or full-time employment or otherwise take action to reduce her alleged damages.

3.      The Council's actions were the result of a legitimate business reasons and a reasonable factor other than age in that the Council's actions were taken as a result of issues with Plaintiff's performance, including Plaintiff's excessive use of personal telephone calls, Plaintiff's failure to complete assigned tasks, Plaintiff's lack of computer skills.

4.      The Council's actions were for good cause in that the Council's actions were taken as a result of issues with Plaintiff's performance, including Plaintiff's excessive use of personal telephone calls, Plaintiff's failure to complete assigned tasks, Plaintiff's lack of computer skills.

5.      The Council's actions were the result of a legitimate business reasons and a reasonable factor other than age in that the Council's actions were taken as a result of economic conditions.

6.     Plaintiff's damages, if any, should be offset or reduced by any retirement benefits, pension benefits, unemployment benefits, social security benefits, and/or payments received under the Settlement Agreement, Release and Waiver of Claims.

7.     As set forth in the Council's Motion to Partially Dismiss (Doc. 34) and Memorandum in Support of Motion to Partially Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (Doc. 35), incorporated as if fully set forth herein, Plaintiff's claims for discrimination based on a reduction of hours are barred because Plaintiff failed to exhaust administrative remedies by (1) failing to timely file an administrative charge of discrimination within 300 days after the date of the alleged discrimination; (2) failing to timely file suit within 90 days of receipt of a notice of dismissal or termination of an administrative charge of discrimination.

8.     Plaintiff's claims for discrimination are barred because Plaintiff failed to exhaust administrative remedies by (1) failing to timely file an administrative charge of discrimination within 180 days after the date of the alleged discrimination; (2) failing to timely file suit within 90 days of receipt of a notice of dismissal or termination of an administrative charge of discrimination.

WHEREFORE, Defendant St. Louis-Kansas City Carpenters Regional Council prays for this Court's Judgment and Order in favor of Defendant St. Louis-Kansas City Carpenters Regional Council and against Plaintiff Mary Miller on all claims in Plaintiff's Amended Complaint, dismissing the Amended Complaint with prejudice, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**BLITZ, BARDGETT & DEUTSCH, L.C.**

By:    */s/ Christopher O. Bauman*
        Robert D. Blitz, #24387
        Christopher O. Bauman, #52480
        Aaron W. Sanders, #64133
        120 S. Central Avenue, Ste. 1500
        St. Louis, Missouri 63105
        (314) 863-1500
        (314) 863-1877 (facsimile)
        rblitz@bbdlc.com
        cbauman@bbdlc.com
        asanders@bbdlc.com

*Attorneys for Defendant St. Louis-Kansas City Carpenters Regional Council*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing was electronically filed with the Clerk of the

Court on March 17, 2021, using the CM/ECF filing system and served to all participating parties.

*/s/ Christopher O. Bauman*