UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARY MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-cv-00175-SEP |
| | ) |
| UNITED BROTHERHOOD OF CARPENTERS | ) |
| AND JOINERS OF AMERICA | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM & ORDER**

Before the Court is Defendant United Brotherhood of Carpenters and Joiners of America's (UBC) Motion to Dismiss. (Doc. [48]). For the reasons set forth below, the Motion is granted.

**FACTS AND BACKGROUND**

Plaintiff Mary Miller filed this action on January 30, 2020, alleging that Defendant St. Louis-Kansas City Carpenters Regional Council (Regional Council) violated her rights under the Age Discrimination in Employment Act (ADEA). 29 U.S.C. §§ 621-634. *See* Doc. [1]. On November 6, 2020, Plaintiff filed an amended complaint, which added UBC as a defendant. Doc. [30]. In her First Amended Complaint, Plaintiff alleges that she worked for Regional Council for fifteen years as a front-office receptionist. *Id.* ¶ 2. Plaintiff was a full-time employee of Regional Council until December 2014, when she was allegedly forced to either accept part-time employment or face termination.[1] *Id.* ¶ 29. Defendant accepted the part-time employment and continued to work for Regional Council until her termination on February 13, 2018. *Id.* ¶ 35. Plaintiff was 70 years old at the time she was terminated. *Id.* ¶ 5. She alleges that she was terminated because of her age and was replaced by younger employees. *Id.* ¶ 7.

---

[1] Plaintiff's claims relating to her reduction in hours from full-time to part-time employment were dismissed as untimely. Doc. [71]. A plaintiff may use prior acts "as background evidence to support a timely claim," however, and thus Plaintiff's allegations regarding her demotion in hours may properly be considered here. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

1

In addition to Regional Council, Plaintiff contends that Defendant UBC is also liable for her discrimination claims. *See* Doc. [30]. UBC is an international labor union with over 520,000 members. Doc. [30] at 5. Regional Council is organized as a subsidiary organization of UBC. *Id.* at 6. Plaintiff points to several provisions of UBC's constitution and bylaws that purportedly show that UBC is vicariously liable for Regional Council's actions. For example, its constitution charges UBC with the responsibility of "enforcing the compliance by [Regional Council] with the constitution and bylaws" of the Union. *Id.* ¶ 11. Additionally, Plaintiff points to several rights and powers that are "reserved" to UBC in its constitution. Such reserved powers include UBC's right to terminate officers of Regional Council for actions that "undermine[] the welfare" of the UBC, to suspend local unions or regional councils organized by UBC for "violations of the union's constitution, union laws or principles, or for acting in a manner to undermine the [UBC's] welfare," and to seize any records maintained by the local unions or regional councils. *Id.* ¶¶ 12-14. Further, Plaintiff notes that Regional Council is generally governed by the bylaws of UBC and that any laws and trade rules that were promulgated by Regional Council are subject to UBC's approval. *Id.* ¶ 15.

Based on those provisions, Plaintiff alleges that UBC "maintained an agency relationship with Regional Council." *Id.* ¶ 51. She further alleges that "upon information and belief," UBC knew, or at least should have known, of instances of discrimination perpetrated on employees by Regional Council, including the "hiring and firing decisions made by Regional Council officers in contravention with [UBC's] bylaws or principles." *Id.* ¶¶ 16, 52. Therefore, Plaintiff concludes, UBC either "acquiesced in, ratified or tacitly approved" of Regional Council's discriminatory practices. *Id.* ¶ 17. Finally, Plaintiff alleges that, because UBC had actual or constructive notice of the discrimination and controlled Regional Council, it had the duty to act to prevent the allegedly discriminatory hiring and firing practices but failed to do so. *Id.* ¶ 65.

## **LEGAL STANDARD**

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to be true and makes all reasonable inferences in favor of the nonmoving party. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a

motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specifically, the complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Twombly*, 550 U.S. at 556.

## DISCUSSION

"The United States Supreme Court has recognized that common law principles of agency govern whether an international union is liable for the actions of a local chapter or its officers." *Carr v. Local Union 1593, IBEW*, 371 F. Supp. 2d 1097, 1105 (citing *Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 216-17 (1979). An agency relationship does not exist between a union and a local solely by virtue of the local organizing under the association of the international. *See Shimman v. Frank*, 625 F.2d 80, 97 (6th Cir. 1980) ("The International Union is a separate body from the local. The acts of the local and its agents cannot automatically be imputed to the International."). Rather, common law agency principles require that the union "instigated, supported, ratified or encouraged" the local's actions, or that the local "acted pursuant to its agreement" with the union, before an international can be held liable for the action of a local. *Carr*, 371 F. Supp. 2d at 1105 (internal quotation marks omitted) (citing *Moore v. Local Union 569 of the Int'l Bhd. of Electrical Workers*, 989 F.2d 1534, 1543 (9th Cir. 1993)).

Plaintiff alleges that Regional Council maintained an agency relationship with UBC because UBC "managed, organized, influenced and controlled" Regional Council. Doc. [30] ¶ 51. Plaintiff's theory of control is premised on several provisions of the UBC constitution, which Regional Council is bound by, as a subsidiary of UBC. *See* Doc. [30] ¶¶ 24, 51. Under the cited provisions, UBC "reserves" the right to suspend local unions or councils, to seize records kept by local affiliates and to terminate senior officers of affiliated chapters for various reasons. Doc. [49] at 2. Plaintiff also highlights that Regional Council was governed by the

3

bylaws and constitution of UBC and that any trade rules created by Regional Council were subject to approval of UBC. *Id.* Taken together, Plaintiff contends that the provisions show that UBC controlled Regional Council and can be held liable for failing to intervene to stop its discriminatory actions. Doc. [49] at 3. In response, Defendant argues that, while UBC possessed the reserved right to interfere with the affairs of Regional Council, it did not exercise that right and therefore did not control Regional Council. Doc. [50] at 3. UBC also contends that it did not ratify any alleged misconduct because it did not take any actions to exercise its authority over the operations of Regional Council. Doc. [48] at 5-6.

In analyzing a union's control over a local chapter, "what should matter is not so much the [union's] theoretical control over the local as the nature and extent of the actual control." *Carr*, 371 F. Supp. 2d at 1105 (citing *Laughon v. Int'l Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists & Allied Crafts of the United States and Canada*, 248 F.2d 931, 935 (9th Cir. 2001)). Courts have found union bylaws and constitutions persuasive in determining a union's degree of control over a local. *Id.* (citing *Switalski v. Int'l Association of Bridge, Structural and Ornamental Iron Workers, Local Union No.3*, 881 F. Supp. 205, 209 (W.D. Pa. 1995); *United States v. Int'l Bhd. of Teamsters*, 728 F. Supp. 1032, 1052 (S.D.N.Y. 1990); *Boss v. Int'l Bhd. of Boilermakers*, 567 F. Supp. 845, 847 (N.D. N.Y. 1983)). In analyzing such documents and other evidence, courts look at whether the local union's general or daily operations are subject to the international organization's control. *Id.* (quoting *E.E.O.C. v. Int'l Bhd. of Elec. Workers, Local 998*, No. 3:02-cv-7374, 2005 U.S. Dist. LEXIS 2954, at *9 (N.D. Ohio Feb. 18, 2005)).

To survive UBC's motion to dismiss, Plaintiff must plead sufficient facts to support her allegations and may not rely on mere conclusory statements. *Culver-Stockton Coll.*, 865 F.3d at 1057 (quoting *Iqbal*, 556 U.S. at 678). Plaintiff has not met this burden with respect to UBC's alleged control over Regional Council. As stated above, courts look to what *actual* control a union exercised over a local, as demonstrated by supporting documents and other evidence. Here, Plaintiff has not alleged that UBC actually exercised any of the reserved powers granted to it by the UBC constitution. Further, Plaintiff points to the fact that UBC is responsible for ensuring compliance with its constitution and bylaws. Even if that is true in theory, Plaintiff has not alleged that UBC actually exercised that authority. Therefore, Plaintiff has not sufficiently alleged that UBC can be held liable for Regional Council's action based on a control theory.

Plaintiff also asserts that, because UBC knew or should have known about the discriminatory hiring and termination policies of Regional Council and failed to take any corrective measures, it can also be held liable under a ratification theory of liability. Doc. [30] ¶ 17; Doc. [49] at 2. But ratification can only occur where a principal "evidences an intention to ratify" an act of an agent. *Carr*, 371 F. Supp. 2d at 1109; *see also* Restatement (Second) of Agency § 82 (ratification requires the "affirmance by a person of a prior act").

Plaintiff has not alleged that UBC took any steps that could constitute ratification. Even taking as true Plaintiff's allegations that UBC knew or should have known about the discriminatory conduct of Regional Council, there are no allegations that UBC took any affirmative steps to ratify or otherwise authorize such conduct. As UBC points out, Plaintiff's Amended Complaint does not allege that UBC was involved in any of the decisions that led to Plaintiff's termination. *See* Doc. [50] at 4. Plaintiff does not allege that UBC was involved in her demotion from full-time to part-time employment or her subsequent termination. Nor did Plaintiff herself involve UBC by filing a complaint regarding either action. Thus, Plaintiff does not plead sufficient facts to support a claim that UBC ratified Regional Council's violations.

Finally, Plaintiff cites several authorities from outside this circuit suggesting that discriminatory behavior by a local union may be attributed to an international union if the international has "condoned" such conduct. Doc. [49] at 5; *see also Kitchen Fresh, Inc. v. NLRB*, 716 F.2d 351, 355 (6th Cir. 1983) ("[T]he party seeking to prove that an employee is a union agent must show that the union 'instigated, authorized, solicited, ratified, condoned or adopted' the employee's actions or statements.") (citing *NLRB v. Miramar of California*, 601 F.2d 422, 425 (9th Cir. 1979)). Plaintiff's "condoning" theory of liability rests on her allegation that UBC knew or should have known that Regional Council was engaging in discriminatory practices but "looked the other way," thus condoning Regional Council's discriminatory actions.

In the Eighth Circuit, international unions have no duty to investigate or otherwise remedy employment discrimination at the local level. *Eliserio v. USW, Local 310,* 398 F.3d 1071, 1076-77 (8th Cir. 2005) (citing *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 832 (8th Cir. 2002)). An international union may be held liable for the discriminatory acts of a local only where it "instigated or actively supported the discriminatory acts." *Id.* (internal quotation marks omitted) (citing *Thorn*, 305. F.3d at 832-33) (quoting *Angelino v. New York Times Co.*, 200 F.3d 73, 95-96 (3rd Cir. 1999)). This Court has also cited other circuit courts' rejection of

5

vicarious liability on the part of a union for "mere inaction on the part of its officers." *See Bond v. Teamsters Local 600*, 1989 U.S. Dist. LEXIS 18138, at *6 (E.D. Mo. Apr. 12, 1989) (finding that a union "which does not authorize, encourage or ratify. . . violations should not be held liable for them.") (quoting *Shimman*, 625 F.2d 80 at 99).

In support of her argument, Plaintiff cites *Carter v. Chrysler Corp.*, 1998 U.S. Dist. LEXIS 21975 (E.D. Mo., April 7, 1998), but her reliance on that case is misplaced. While *Carter* states that a union *may* be liable if it condones acts of discrimination, it also notes that "it has not been established that a union is liable for merely acquiescing or remaining passive in the face of impermissible discrimination by the employer." *Id.* at *5 (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 656-66 (1987); *Martin v. Local 1513 & District 118 of International Ass'n of Machinists & Aerospace Workers*, 859 F.2d 581, 584 (8th Cir. 1988)).

Drawing all reasonable inferences in favor of Plaintiff, she has failed to state a claim based on UBC's alleged condoning of Regional Council's actions. Accepting as true Plaintiff's allegation that UBC knew or should have known about of the discriminatory acts and policies occurring within Regional Council, Plaintiff still does not allege that UBC did more than remain passive with respect to the alleged acts. Plaintiff's Amended Complaint does not, for example, allege that UBC actively supported or otherwise instigated Regional Council's behavior. Without more, Plaintiff's allegation that UBC turned a blind eye to discrimination is not enough to support a claim of vicarious liability. Plaintiff has failed to state a claim for which relief may be granted and thus her claims against UBC must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant United Brotherhood of Carpenters and Joiners of America's Motion to Dismiss (Doc. [48]) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Amended Complaint is **DISMISSED with prejudice** as to Defendant United Brotherhood of Carpenters.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 30th day of September, 2021.

                                                      SARAH E. PITLYK
                                                     UNITED STATES DISTRICT JUDGE